IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD RICHARD ROCKEL, II | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN  W.  COLVIN,  Acting | : | |
| Commissioner of Social Security | : | NO. 12-5842 |

**MEMORANDUM**

**Padova, J.**                                                    **February 10, 2014**

Plaintiff, Edward Richard Rockel, II, filed this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of Defendant Acting Commissioner of Social

Security, Carolyn W. Colvin ("Commissioner"), partially denying his claim for Disability

Income Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-434.

Plaintiff filed a Request for Review to which the Commissioner responded.  Pursuant to Local

Rule 72.1(d)(1)(C), we referred the case to Magistrate Judge Lynne A. Sitarski for a Report and

Recommendation.  The Magistrate Judge has recommended that Plaintiff's Request for Review

be denied.  Plaintiff filed timely objections to which the Commissioner has responded.  For the

reasons that follow, we sustain Plaintiff's objections and remand this matter to the Commissioner

for reconsideration and further findings.

## I.      BACKGROUND

Plaintiff protectively filed a Title II Application for DIB on July 21, 2006, alleging that

he had become disabled beginning on December 20, 2005.  (R. 253-58.)  He simultaneously

applied for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security

Act, 42 U.S.C. §§ 1381-1383.[1]  (R. 259-61.)  He claimed to be disabled by major depression,

_____

[1]Plaintiff withdrew his claim for SSI on June 3, 2008.  (R. 128.)

social anxiety, back problems, inability to sleep, and mood swings. (R. 272.) At the time of his application, he was 40 years old. (R. 253.) Prior to December 20, 2005, he had been employed as a custodian and he had also worked as a machine helper. (R. 85, 120.)

The Commissioner denied Plaintiff's applications for DIB and SSI on December 11, 2006. (R. 133-154.) Plaintiff filed a Request for Hearing by Administrative Law Judge on December 26, 2006. (R. 155-56.) A hearing was held on April 24, 2008, at which both Plaintiff and a vocational expert testified. (R. 81-107.) On May 22, 2008, Administrative Law Judge ("ALJ") Paula Garrety issued a Partially Favorable Decision. (R. 111-126.) The ALJ concluded that Plaintiff "was 'disabled' within the meaning of the Social Security Act from December 20, 2005 through January 1, 2008." (R. 115.) She further concluded that Plaintiff's medical condition had improved on January 2, 2008 and that his disability ended on that date. (R. 115-16.) Specifically, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine and major depressive disorder with anxiety." (R. 119.) She further found that, during the period from December 20, 2005 through January 1, 2008, Plaintiff had the residual functional capacity ("RFC") to perform light work that was "low stress in nature, involving no detailed tasks, confined to simple and routine tasks, with minimal supervision." (Id. (emphasis omitted).) However, he was also unable "to maintain regular attendance and perform work activity on a sustained basis." (Id. (emphasis omitted).) The ALJ also found that, beginning in January 2008, Plaintiff was no longer disabled because he "demonstrated decreased depressive symptoms and increased motivation" and "good concentration with no attention problems." (R. 121.) Plaintiff had also begun looking for work and engaging in "a broad range of daily activities" such as "household chores, cleaning, laundry, driving a neighbor on errands and riding a bike." (Id.) As a result, the ALJ concluded that,

2

beginning on January 2, 2008, Plaintiff had a RFC for light work that was "low stress in nature, [not] involving detailed tasks, confined to simple and routine tasks, with minimal supervision, few work changes, and limited contact with the public and/or co-workers." (R. 122 (emphasis omitted).)

On July 23, 2008, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration Office of Hearings and Appeals. (R. 195-98.) He sought reconsideration of the ALJ's finding that he was no longer disabled after January 2, 2008. (R. 197.) He enclosed a June 10, 2008 report from his treating psychiatrist, Dr. Ralph Primelo. (Id.) On July 31, 2009, the Appeals Council issued an Affirmation and Order affirming the ALJ's finding that Plaintiff was disabled from December 20, 2005 until January 2, 2008 and remanding Plaintiff's claim to the ALJ for further proceedings limited to the question of whether Plaintiff was disabled after January 1, 2008. (R. 130-32.)

Following the remand, the ALJ held a second hearing on October 7, 2010, at which Plaintiff and a vocational expert both testified. (R. 46-80.) On December 18, 2010, the ALJ issued another Partially Favorable Decision. (R. 23-45.) The ALJ concluded that Plaintiff "was 'disabled' within the meaning of the Social Security Act from December 20, 2005 through May 20, 2008." (R. 29.) She further concluded that Plaintiff's medical condition had improved on May 21, 2008 and that his disability ended on that date. (Id.)

Specifically, the ALJ found that Plaintiff had the following severe impairments between January 2, 2008 and May 2008: "degenerative joint disease of the lumbar spine, obesity (5'10", 250+ pounds), major depressive disorder, and anxiety." (R. 32 (emphasis omitted).) Plaintiff's impairments arose in 2005 when, after the loss of close friends and family members, he developed depression and began to suffer from panic attacks. (Id.) He showed signs of

3

improvement in early 2008 but continued to "experience anxiety and periods of irritability and anger" in April and May 2008, "which interfered with his ability to perform work activities on a regular basis." (Id.)  In addition, Plaintiff had a history of spinal surgery and "degenerative disc disease with chronic mid to lower back pain, with radiation to the left hip." (R. 33.)

The ALJ found that, during the period from January 2, 2008 through May 20, 2008, Plaintiff had the RFC to perform light work that "involve[ed] routine 1-2 step tasks, no detailed instructions, minimal supervision, limited contact with the public/co-workers, and few work changes." (R. 32 (emphasis omitted).)  However, he was also "further restricted by his inability to maintain regular attendance." (Id. (emphasis omitted).)  Consequently, the ALJ found that, "[b]ased upon the credible evidence of record, including the opinions of Dr. Ralph Primelo." Plaintiff "was unable to meet the basic mental demands of competitive employment on a regular, full time basis" and, considering his "age, education, work experience, and [RFC], there were no jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (R. 33 (emphasis omitted).)

The ALJ also found, however, that, beginning on May 21, 2008, Plaintiff was no longer disabled because he "demonstrated decreased depressive and anxiety symptoms, with increased motivation, improved concentration/attention" and "felt well enough to engage in a broad range of daily activities" such as "performing household chores, cleaning, laundry, driving a neighbor on errands, and riding a bike." (R. 34.)  As a result, the ALJ concluded that, beginning on May 21, 2008, Plaintiff had a RFC to perform light work that "involve[ed] routine 1-2 step tasks, no detailed instructions, minimal supervision, limited contact with the public/co-workers, and few work changes." (R. 35 (emphasis omitted).)  The ALJ further concluded that beginning on May

21, 2008, there were a significant number of jobs in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC.  (R. 38 (emphasis omitted).)

On February 18, 2011, Plaintiff filed a Request for Review of the ALJ's second decision with the Social Security Administration/Office of Hearings and Appeals.  (R. 18.)  He sought reconsideration of the ALJ's determination that he was no longer disabled after May 21, 2008.  (R. 328.)  He claimed that the ALJ failed to give appropriate weight to the opinion of his treating psychiatrist, Dr. Primelo, and failed to consider all relevant evidence from his treatment history.  (R. 327.)  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  (R. 1.)

Plaintiff filed the instant action on October 12, 2012.  The Request for Review raises two issues:  (1) whether the ALJ erred by not giving adequate weight to the medical opinions and findings of Plaintiff's treating psychiatrist, Dr. Primelo; and (2) whether the ALJ erred in finding that Plaintiff was no longer disabled on May 21, 2008 as a result of medical improvement.  Magistrate Judge Sitarski found that the ALJ gave appropriate weight to the opinion evidence provided by Dr. Primelo, because the ALJ's RFC determination is consistent with Dr. Primelo's opinion that Plaintiff suffers from "problems with concentration, from poor stress tolerance, and from social anxieties, resulting in his being limited to work involving routine one to two step tasks, no detailed instructions, minimal supervision, limited contact with the public and co-workers, and few work changes."  (R&R at 11 (citing R. 35.).)  Magistrate Judge Sitarski further found that the record contains substantial evidence to support the ALJ's rejection of Dr. Primelo's opinion that Plaintiff is totally unable to work.  (Id. at 11-13 (citing R. 354, 358, 451-52, 482, 489-93.)  Magistrate Judge Sitarski also found that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff experienced medical improvement after

May 20, 2008. (R&R at 13-14 (citing R. 495, 515, 537, 531, 545).) Plaintiff objects to the Magistrate Judge's finding that the ALJ gave appropriate weight to Dr. Primelo's opinion evidence and to her determination that the ALJ correctly found that Plaintiff's disability ended on May 21, 2008 based on medical improvement.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited, and the ALJ's findings of fact will not be disturbed if they are supported by substantial evidence. Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citing 42 U.S.C. § 405(g)); see also 42 U.S.G. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Brownawell, 554 F.3d at 355 (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003), and citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008)). The ALJ's legal conclusions are subject to plenary review. Hagans v. Comm'r of Social Security, 694 F.3d 287, 292 (3d Cir. 2012) (citing Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)).

We review de novo those portions of a Magistrate Judge's report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1). We may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. Id.

## III. DISCUSSION

### A. The ALJ's Rejection of Dr. Primelo's Opinion Evidence

Plaintiff argues that the Magistrate Judge erred in finding that the ALJ gave appropriate weight to the opinion evidence supplied by Dr. Primelo, Plaintiff's treating psychiatrist.

1.      Dr. Primelo's opinion evidence

The record before the ALJ contained three documents authored by Dr. Primelo dated April 8, 2008, June 10, 2008, and August 10, 2010. (R. 450-53, 482, 489-93.)  On April 8, 2008, Dr. Primelo filled out a form entitled "Medical Opinion Re:  Ability To Do Work-Related Activities (Mental)" and reported that Plaintiff could not satisfactorily perform the following functions on a sustained basis in a regular work setting:  "[m]aintain attention for two hour segment," "[s]ustain an ordinary routine without special supervision," "[w]ork in coordination with or proximity to others without being unduly distracted," "[m]ake simple work-related decisions," "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms," "[p]erform at a consistent pace without an unreasonable number and length of rest periods," "[a]ccept instructions and respond appropriately to criticism from supervisors," "[r]espond appropriately to changes in a routine work setting," "[d]eal with normal work stress," "[u]nderstand and remember detailed instructions," "[c]arry out detailed instructions," "[s]et realistic goals or make plans independently of others," and "[d]eal with stress of semiskilled and skilled work."  (R. 451-52.)  Dr. Primelo also noted that Plaintiff's ability to function in the following areas was seriously limited:   "[r]emember work-like procedures," "[u]nderstand and remember very short and simple instructions," "[c]arry out very short and simple instructions," "[m]aintain regular attendance and be punctual," "[a]sk simple questions or request assistance," "[g]et along with co-workers or peers," "[b]e aware of normal hazards and take appropriate precautions," "[i]nteract appropriately with the general public," "[m]aintain socially appropriate behavior," "[a]dhere to basic standards of neatness and cleanliness," "[t]ravel in unfamiliar place," and "[u]se public transportation."  (Id.)  Dr. Primelo explained that Plaintiff's limitations arose from his "low stress tolerance/panic attacks/anxiety/

poor concentration/insomnia." (R. 452.) Dr. Primelo also noted that Plaintiff would be expected to be absent from work more than four days every month. (Id.)

On June 10, 2008, Dr. Primelo sent a letter to Plaintiff's attorney diagnosing Plaintiff with "BiPolar Disorder-Depressed, Panic Disorder without Agoraphobia, Social Anxiety Disorder, Obsessive-Compulsive Disorder and ADHD Adult." (R. 482.) Dr. Primelo further stated that Plaintiff had the following waxing and waning symptoms:  "poor concentration, appetite changes, insomnia, anhedonia, anergia, suicidal ideation with panic attacks including substemal chest pressure, shortness of breath, diaphoresis." (Id.) Dr. Primelo also noted that Plaintiff "has had periods of extreme irritability, anger, starting fights and arguments, obsessive spending . . . , poor sleep, distractibility, racing thoughts, hypersexuality and risky behavior." (Id.) Dr. Primelo also observed that Plaintiff "had distractibility and low stress tolerance" and "demonstrated an inability to maintain any sort of meaningful work." (Id.) Plaintiff also exhibited Obsessive-Compulsive Disorder symptoms, such as the "need to count things in fours." (Id.) Dr. Primelo further opined that, while Plaintiff had experienced some improvement, he was totally disabled:

> Despite the fact that [Plaintiff] may have brief periods of improved functioning over the past three years, it is quite obvious to me that his numerous psychiatric illnesses have resulted in low stress tolerance and an inability to function.  These illnesses are being aggressively treated, however, it is my medical opinion that [Plaintiff] is totally disabled at this point and will remain so for at least the next two years.

(Id.)

On August 10, 2010, Dr. Primelo filled out a form entitled "Medical Source Statement of Claimant's Ability to Perform Work-Related Mental Activities." (R. 489.) On this form, Dr. Primelo reported that Plaintiff had been diagnosed with Bipolar Disorder and Obsessive

Compulsive Disorder.  (Id.)  Dr. Primelo also identified the following symptoms suffered by Plaintiff:  "[p]oor memory," disturbed appetite, sleep, and mood, "[e]motional lability," "[r]ecurrent panic attacks," "[a]nhedonia or pervasive loss of interests," "[p]ychomotor agitation or retardation," paranoia, "[f]eelings of guilt/worthlessness," "[d]ifficulty thinking or concentrating," "[s]uicidal ideation or attempts," "[s]ocial withdrawal or isolation," "[d]ecreased energy," "[o]bsessions or compulsions," "[p]ersistent irrational fears," "[g]eneralized persistent anxiety," "[h]ostility and irritability," and "[p]athological dependence or passivity."  (Id.)  Dr. Primelo also stated that Plaintiff's impairments would cause him to be absent from work more than three times each month and that he would have "difficulty working at a regular job on a sustained basis" because he has "[l]ow frustration tolerance[,] mood lability & [a]nxiety & panic attacks with depersonalization[,] poor concentration/attention." (R. 490.)  Dr. Primelo also opined that Plaintiff would have "no useful ability to function" in the following areas:  "[a]bility to understand, remember, and carry [sic] detailed instructions," "[a]bility to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "[a]bility to sustain an ordinary routine without special supervision," "[a]bility to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "[a]bility to accept instructions and respond appropriately to criticism from supervisors," "[a]bility to respond appropriately to changes in the work setting," and "[a]bility to set realistic goals or make plans independently of others."  (R. 489-92.)  Dr. Primelo concluded that Plaintiff was not "able to work in a competitive work environment on a sustained basis." (R. 493.)

        2.      The ALJ's rejection of Dr. Primelo's opinion evidence

        The ALJ rejected Dr. Primelo's opinions as follows:

> The assessments from Dr. Primelo are not accepted, as they are not supported by the contemporaneous treatment records. As noted above, by May 2008, the claimant's condition had improved and remained fairly stable thereafter. He had been looking for work, although he was unable to find a job (Exhibit I7F). Since that time, most issues addressed in therapy center on living with his elderly parents and the conflicts with father who may suffer from dementia. Claimant sees a psychiatrist for medication checks every three months. He also has resumed group therapy and records document active participation and good interaction with peers and therapists.

(R. 37-38.) Plaintiff argues that the evidence cited by the ALJ is not inconsistent with Dr. Primelo's opinions and does not constitute substantial evidence from which she could properly disregard Dr. Primelo's opinions.

"An ALJ should give 'treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Brownawell, 554 F.3d at 355 (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). Moreover, "contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright." Id.

### 3. Plaintiff's treatment records

The ALJ states in her decision that she rejected Dr. Primelo's opinions based on Exhibit 17F, which consists of Plaintiff's treatment records from the Lehigh Valley Health Network from April 1, 2008 until September 27, 2010. We have reviewed those medical records and find that, with the exception of suicidal ideation, they support the assessments on which Dr. Primelo based his opinion that Plaintiff was too disabled to work.[2] We primarily considered Dr. Primelo's assessments that Plaintiff had "low stress tolerance/panic attacks/anxiety/poor concentration/ insomnia" (R. 452); that he had the following waxing and waning symptoms: "poor

---

[2]Plaintiff's treatment records from April 1, 2008 until September 27, 2010 consistently state that he had no suicidal ideation. (See R. 494-547.)

concentration, appetite changes, insomnia, anhedonia, anergia, suicidal ideation with panic attacks including substemal chest pressure, shortness of breath, diaphoresis" as well as "periods of extreme irritability, anger, starting fights and arguments, . . . and poor sleep" (R. 482); and that he  had disturbed appetite, sleep, and mood, "[e]motional lability," "[r]ecurrent panic attacks," "[a]nhedonia or pervasive loss of interests," "[p]ychomotor agitation or retardation," paranoia, "[f]eelings of guilt/worthlessness," "[d]ifficulty thinking or concentrating," "[s]uicidal ideation or attempts," "[s]ocial withdrawal or isolation," "[d]ecreased energy," "[o]bsessions or compulsions," "[p]ersistent irrational fears," "[g]eneralized persistent anxiety," "[h]ostility and irritability," and "[p]athological dependence or passivity."  (R. 489.)

As the ALJ noted, the records of Plaintiff's participation in group therapy state that, beginning in August, 2010, Plaintiff actively participated in group therapy and had good interaction with his peers and therapists.  (R. 494, 496-98.)  However, Plaintiff did not begin to participate in group therapy until July 2010, more than two years after the ALJ found that his condition had medically improved.  Consequently, we conclude that the records of Plaintiff's participation in group therapy do not support the ALJ's finding that he had improved and was no longer disabled as of May 21, 2008

The records of Plaintiff's individual therapy between September 8, 2008 and November 9, 2009, when his therapist left the clinic, reflect waxing and waning symptoms, rather than sustained medical improvement.  These records discuss Plaintiff's social phobia, low stress tolerance, extreme irritability, anger, poor sleep, and habit of starting fights.  For example, Plaintiff's September 22, October 13, and October 29, 2008 Individual Therapy notes states that he was concerned about his social phobia.  (R. 536, 538, 540.)  The October 29, 2008 Individual Therapy note further states that Plaintiff had recently kicked his father in the chest and admitted

to three similar incidents over the previous three or four months.  (Id.)  The November 12, 2008 Individual Therapy note states that Plaintiff reported that his father had fallen off his bike and was severely injured, that Plaintiff made "quite venomous" remarks regarding his father, and that Plaintiff had physically abused his father by poking him in his broken ribs.  (Id.)  The March 20, 2009 Individual Therapy note states that Plaintiff was isolating himself and spending most of his time with his elderly parents.  (R. 528.)  The December 10, 2008, May 5, May 18, June 1, July 14, and November 9, 2009 Individual Therapy notes all report that Plaintiff discussed ongoing conflicts, frustration and altercations with his father.  (R. 503, 517, 521, 524-25.)

Some of the Individual Therapy notes show that Plaintiff also had medical issues that negatively affected his symptoms.   The May 19, 2009 Individual Therapy note states that Plaintiff had fatigue, appetite change, restlessness, tension, and decreased motivation.  (R. 523.) Plaintiff had not been feeling well and had been to the emergency room for digestive issues, which was making him depressed.  (Id.)  The June 29, 2009  Individual Therapy note states that Plaintiff had gone to the emergency room with severe abdominal pain and nausea and that he had feelings of frustration and fear regarding his medical issues.  (R. 518.)  The July 14, 2009 Individual Therapy note states that Plaintiff had experienced another episode of stomach pain and nausea.  (R. 517.)

Some of the Individual Therapy notes state that Plaintiff was depressed or had regressed. For example, Plaintiff's November 26, 2008 Individual Therapy note states that he had a low mood.  (See R. 533.)  The July 27, 2009 Individual Therapy note similarly states that Plaintiff "presented with low mood and anxious affect."  (R. 516.)  The August 10, 2009 Individual Therapy note states that Plaintiff "presented with anxious mood and affect" and that his condition had regressed.  (R. 515.)  Plaintiff's October 27, 2009 Individual Therapy note reports

that he was mildly depressed, apprehensive with a mildly constrictive affect, and agitated.  (R. 505.)  That note also states that Plaintiff had difficulty concentrating.  (Id.)

A few of the Individual Therapy Notes demonstrate improvements.  For example, Plaintiff's December 10, 2008 Individual Therapy note states that Plaintiff had been running errands for his parents and that he was feeling slightly less anxious in public settings.  (R. 532.) The June 1, 2009 Individual Therapy note states that Plaintiff was making efforts to "increase his participation in social and structured activities" and had gone to a new casino with his family. (R. 521.)   The June 15, 2009 Individual Therapy note states that Plaintiff was making an increased effort to participate in activities outside of his home, that he had gone to a fair, and that he felt less anxiety while out in a public setting.  (R. 520.)  The September 28 and October 12, 2009 Individual Therapy notes report improvements in Plaintiff's relationship with his father and state that his condition was stable.  (R. 507-08.)  The October 26, 2009 Individual Therapy note also reports improvements in Plaintiff's relationship with his father, and states that Plaintiff was also able to go on a social outing after he took his anxiety medication.  (R. 506.)

The records of Plaintiff's Medication Management Visits from April 1, 2008 to September 21, 2010 support Dr. Primelo's assessment that Plaintiff had waxing and waning symptoms, irritability, anger, and poor sleep.  Many of the notes report that Plaintiff was apprehensive, anxious, angry and irritable.  (See R. 509, 519, 534, 537, 539, 542-43, 546-47.) Some of the notes also state that Plaintiff's mood was low, constricted, or depressed.  (See 513, 529, 534, 537, 539, 542-43, 545-47.)  One note, written on March 31, 2009, almost a year after the ALJ found that Plaintiff was no longer disabled, states that Plaintiff had experienced:  "2 panic attacks this past week which were similar to ones he has had in the past - spontaneous onset, 'teeth rattling'; very uncomfortable with feelings of depersonalization." (R. 527.)  During

this time period, Plaintiff was prescribed Seroquel, Restoril, Effexor Xr, and Ativan.  (See R. 519, 526-27, 529, 531, 534, 537, 539, 542-43, 545-47.)  On September 1, 2009, Pristiq was added to his medications.  (R. 513, 502, 495.)  The Medication Management Notes also reflect that Plaintiff had some periods when his symptoms improved.  For example, Plaintiff reported on April 1, 2008 that the Seroquel helped to reduce his anxiety.  (R. 547.)  On May 2, 2008 he was less irritable and sleeping better.  (R. 545.)  On December 23, 2008, Plaintiff reported being stable on his medications and that he had benefitted from individual therapy.  (R. 531.)  The Medication Management Notes reflecting improvements, however, were all followed by Medication Management Notes reflecting increased anger, anxiety, irritability, sleep disruption, or other problems.  (See R. 495, 529, 542, 546.)

While some of the records of Plaintiff's individual therapy and medication management support the ALJ's finding that Plaintiff showed some improvement, those records do not necessarily support the conclusion that Plaintiff has the RFC "to perform the full range of light work."  (R. 37-38.)  The Third Circuit has recognized that, for a person who suffers from mental illness "marked by anxiety, the work environment is completely different from home or a mental health clinic."  Morales, 225 F.3d at 319.  Thus, "observations that [a plaintiff] is 'stable and well controlled with medication' during treatment does not support the medical conclusion that [the plaintiff] can return to work."  Id.  Consequently, the treating psychiatrist's "opinion that [the plaintiff's] ability to function is seriously impaired or nonexistent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting."  Id.

The other treatment records that the ALJ cites as support for her rejection of Dr. Primelo's opinions, and which we have summarized above, do not support the ALJ's assessment

of Plaintiff's condition having improved and remained fairly stable.  Rather, they support Dr.

Primelo's opinion that his symptoms waxed and waned.  Having reviewed all of the treatment

notes that the ALJ relied on, we conclude that, while those records provide some support for the

ALJ's rejection of Dr. Primelo's opinions of Plaintiff's symptoms and the extent of his disability,

they do not provide substantial support.  See Brownawell, 554 F.3d at 355 (defining substantial

evidence as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" (quoting Reefer, 326 F.3d at 379 and citing

Johnson, 529 F.3d at 200)); see also Morales, 255 F.3d at 317 (stating that evidence is not

substantial "'if it is overwhelmed by other evidence -- particularly certain types of evidence (e.g.,

that offered by treating physicians)" (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir.

1983))).  Dr. Primelo was Plaintiff's treating physician for years.  Consequently, his opinions

reflect his "expert judgment based on a continuing observation of [Plaintiff's] condition over a

prolonged period of time" and should, therefore, "be accorded great weight."  Plummer v. Apfel,

186 F.3d 422, 429 (3d Cir. 1999).  We conclude that the ALJ erred by not giving great weight to

Dr. Primelo's opinion and findings.  We therefore sustain Plaintiff's objection to the Magistrate

Judge's finding that the ALJ gave appropriate weight to Dr. Primelo's opinion evidence.

        B.      The ALJ's Finding that Plaintiff Was No Longer Disabled

Plaintiff argues that the Magistrate Judge erred in concluding that there was substantial

evidence on the record to support the ALJ's finding that Plaintiff's disability ended after May 20,

2008.  Once an ALJ has found that an individual has been disabled and entitled to DIB pursuant

to Title II, the ALJ is also required to determine whether the individual is still disabled at the

time of the decision.  The ALJ utilizes the eight-step evaluation process provided by 20 C.F.R. §

404.1594(f) to determine whether the claimant is still disabled and entitled to DIB:

1.      If the claimant is engaging in "substantial gainful activity" the disability will be found to have ended.

2.      If the claimant has an "impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1," the disability will be found to continue.

3.      If the claimant has had medical improvement, go on to step 4, otherwise, go to step 5.

4.      If there has been medical improvement that is related to the claimant's ability to work and increases the claimant's residual functional capacity, go on to step 6, otherwise, go to step 5.

5.      If there has been no medical improvement, or if the claimant's medical improvement is not related to his or her ability to work, the ALJ looks at other bases for finding that the claimant's disability has ended.

6.      If there has been medical improvement that is related to the claimant's ability to work, the ALJ will determine whether all of the claimant's current impairments, considered in combination, significantly limit the claimant's ability to do basic work activities.  If they do not, the claimant will no longer be considered to be disabled.

7.      If the claimant's impairments are severe when considered in combination, the ALJ will assess whether the claimant's RFC will allow him or her to do past work.  If so, the claimant's disability will be found to have ended.

8.      If the claimant's impairments are severe when considered in combination, and the claimant can adjust to other work based solely on . . . age, education, and [RFC]," the claimant will no longer be considered to be disabled.

20 C.F.R. 404.1594(f).

The ALJ found that, as of May 21, 2008, Plaintiff experienced medical improvement such that his disability had ended pursuant to 20 C.F.R. § 1594(b)(1).  Specifically, the ALJ found that "[b]eginning on May 21, 2008, the claimant demonstrated decreased depressive and anxiety symptoms, with increased motivation, improved concentration/attention problems.  He felt well enough to engage in a broad range of daily activities, to include performing household chores, cleaning, laundry, driving a neighbor on errands, and riding a bike." (R. 34.)  The ALJ further found, after considering the entire record, that Plaintiff had the RFC to perform light work with the following restrictions:  "1-2 step tasks, no detailed instructions, minimal supervision, limited contact with the public/co-workers, and few work changes."  (R. 35 (emphasis omitted).)

Plaintiff argues that the ALJ erred in finding that he had improved and was no longer disabled as of May 21, 2008, because the evidence in the record shows that, to the extent that he had improved, his improvement was only temporary.  In particular, Plaintiff argues that the ALJ failed to apply the appropriate factors for considering impairments that are subject to temporary remission.   The regulations provide that, "in assessing whether medical improvement has occurred in persons" who are subject to temporary remission, the ALJ should "be careful to consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsenings.  Improvement in such impairments that is only temporary will not warrant a finding of medical improvement."  20 C.F.R. § 404.1594(c)(iv).

We have already determined that the ALJ erred by not giving adequate weight to Dr. Primelo's opinion and findings, which state that Plaintiff was totally disabled by Bipolar Disorder-Depressed, Panic Disorder without Agoraphobia, Social Anxiety Disorder, Obsessive-Compulsive Disorder, and ADHD Adult.  (See R. 482.)  As Plaintiff's treating physician for years, Dr. Primelo's opinions reflect his "expert judgment based on a continuing observation of [Plaintiff's] condition over a prolonged period of time" and should, therefore, "be accorded great weight."  Plummer, 186 F.3d at 429.  The ALJ however, disregarded Dr. Primelo's opinions.  (R. 37.)   Furthermore, the ALJ did not discuss the treatment notes that support Dr. Primelo's opinions, most notably, the notes from his medication management visits (R. 502, 509, 513, 519, 526-27, 529, 531, 534, 537, 539, 542-43, 545-47); and the notes of his individual therapy that discuss his physical attacks on his father, his concerns about his social phobia, and his signs of depression, fatigue, restlessness, tension, agitation, and difficulty concentrating (R. 503, 505, 515, 516, 523-25, 528, 532, 535-36, 538, 540).  We conclude, accordingly, that the ALJ erred by not giving adequate weight Dr. Primelo's opinions and findings and to the medical records that

17

support those opinions and findings.   As the ALJ improperly disregarded significant record evidence, we further conclude that her finding that Plaintiff was no longer disabled as of May 21, 2008 due to medical improvement is not supported by substantial evidence.   See Martinez v. Astrue, Civ. A. No. 12–4348, 2013 WL 2357632, at *7 (E.D. Pa. May 30, 2013) ("Because she failed to explicitly consider and explain the weight given to all the medical evidence in the record, the ALJ's conclusions are not supported by substantial evidence." (citations omitted)). We therefore sustain Plaintiff's objection to the Magistrate Judge's conclusion that the ALJ correctly determined that Plaintiff's period of disability ended on May 21, 2008.

## IV.     CONCLUSION

For the reasons stated above, we sustain both of Plaintiff's objections to the Magistrate Judge's Report and Recommendation.   In light of the need for analysis of all of the evidence, including Dr. Primelo's medical opinions and findings, we remand this action to the Commissioner for further proceedings consistent with this Memorandum pursuant to the fourth sentence of 42 U.S.C. § 405(g).

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.